## IN THE COURT OF APPEALS OF IOWA

No. 24-0811
Filed July 24, 2024

**IN THE INTEREST OF S.M.,**
**Minor Child,**

**J.M., Father,**
　　Appellant.
_____

Appeal from the Iowa District Court for Story County, Hunter W. Thorpe, Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Katherine R.J. Scott of New Point Law Firm, PLC, Ames, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Shannon M. Leighty of Public Defenders Office, Nevada, attorney and guardian ad litem for minor child.

Lisa M. Noble of Noble Law PLLC, Des Moines, for intervenor-paternal grandmother placement.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

The juvenile court terminated the father's parental rights to S.M., born in January 2023, pursuant to Iowa Code section 232.116(1)(e), (h), and (*l*) (2024).[1] The father appeals, challenging whether termination is in S.M.'s best interests and asserting that we should rely on the permissive exception to avoid termination, grant him a six-month extension of time, or, in the alternative, order a guardianship with the paternal grandmother instead of terminating his rights. After considering these challenges, we affirm the termination.

At the child's birth, her umbilical cord tested positive for amphetamines and methamphetamine, and the Iowa Department of Health and Human Services (the department) removed her from the father's custody less than a week after she was born. The father refused a drug test requested by the department. Since that time, the child has never been returned to his custody. After several changes in placement, the department had most recently placed S.M. with her paternal grandmother where she remained at the time of the termination trial.

Throughout the case, the father did not demonstrate any consistent period of sobriety. He admitted to being a daily methamphetamine user through June 2022; to using methamphetamine in May, June, July, and October 2023 and March 2024; and testified at the April 2024 termination hearing that he is an addict. His outpatient addiction counselor testified that the father has been an addict for many years and still uses weekly. Along with his admissions of use, the father tested positive for methamphetamine in June, July, and December 2023 and February

---

[1] The mother's parental rights were not terminated.

2024; he did not attend one or two requested drug tests in February, September, October, and November 2023 and February and March 2024. He entered inpatient treatment in May 2023 but left before completing it and against staff advice; he did the same in February 2024. Although he did attend some outpatient treatment, he disengaged for two and one-half weeks in March 2024. However, he was scheduled to begin a thirty-day inpatient treatment program again the day after the termination hearing followed by twelve weeks of outpatient treatment.

The father also had mental health diagnoses of attention deficit hyperactivity disorder, depression, anger, and bipolar disorder. The father admitted that his substance use and his mental-health issues were intertwined but that he was not actively engaged in mental health services at the time of the termination hearing. In July 2022, the father was transported to the hospital via ambulance after he became unresponsive due to a suspected methamphetamine overdose. Visitation between the father and S.M. was always fully supervised.

In its order terminating the father's parental rights, the juvenile court found that "mental health concerns are still present." The court elaborated that "[w]hen these concerns are combined with the ongoing substance abuse problems, there are clear ongoing safety issues that have yet to be addressed. Namely, the risk of continual methamphetamine use is exacerbated by failing to adequately address any underlying mental health concerns that may contribute to the substance abuse." At the same time, the court found that "there is little concern when it comes to the [f]ather's interaction with" S.M. and "he loves the child very much and based upon the testimony of others, it appears the child loves him too." However, the court ultimately determined that "[p]ast conduct is indicative of future progress and

[the father's] past conduct provides a bleak outlook on the chances of the child being able to return to his care any time soon." More specifically, the court stated that "[a] child cannot safely be raised in a home where long-term methamphetamine addictions go on unresolved." Regarding S.M.'s bond with the father, the court determined that "while she knows him, she has never known him in the capacity as a full-time caregiver." And, it added that she "has already been removed from the care of [the father] for all but a few days of her life." Lastly, "[g]iven the child's age and lack of stability a guardianship would bring, the evidence does not support establishing a guardianship."

The father appeals.

## I. Standard of Review.

In general, we follow a three-step analysis in reviewing the termination of a parent's rights. *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). We first consider whether the State proved a statutory ground for termination of the parent's rights under section 232.116(1). *Id.* Second, we look to whether termination of the parent's rights is in the child's best interests. *Id.* (citing Iowa Code § 232.116(2)). Third, we consider whether any of the exceptions to termination in section 232.116(3) should be applied. *Id.* The father does not challenge the statutory grounds for termination, so we do not address that issue. *See id.* at 40 (stating that "we do not have to discuss [the first] step" when a parent fails to dispute the existence of all grounds for termination under section 232.116(1)); *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("[O]ur review is confined to those propositions relied upon by the appellant for reversal on appeal."). Thus, we begin our analysis with his best-interests claim.

**II. Discussion.**

    **A. Best Interests.**

First, the father asserts the State has not established by clear and convincing evidence that termination is in S.M.'s best interests. When making a best-interests determination, we focus on the child's safety and need for a permanent home. *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially). And we consider the best placement for furthering the child's long-term nurturing and growth and the child's physical, mental, and emotional condition and needs. Iowa Code § 232.116(2). But, in making this best-interest argument, the father relies on the grandmother's rights as the basis for his challenge, noting that the termination of his rights would make the grandmother "merely fictive kin" and jeopardize the stability the grandmother's home offers. But, the father does not have standing to make this argument. *See In re S.P.*, No. 19-0069, 2019 WL 1294178, at *2 (Iowa Ct. App. Mar. 20, 2019) (noting the mother did not have standing to raise a challenge on behalf of the grandmother, who wished to intervene in the proceedings); *see also In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (holding one parent cannot argue facts or legal positions pertaining to the other parent); *In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007) (determining a father did not have standing to raise arguments on another's behalf in an effort to obtain a reversal of the termination of his parental rights).

Moving to his argument that the best placement for the child's safety would be with him, along with parenting support from the grandmother, we disagree because his continued substance use supports termination being in S.M.'s best

interest. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (considering a parent's refusal "to acknowledge any illegal drug use despite strong evidence to the contrary" in assessing a child's best interests). There is no guarantee that the grandmother will be a long-term option, and the father's substance use leads to safety concerns for S.M. as "[a] parent's methamphetamine use creates a dangerous environment for children." *In re A.B.*, No. 21-1495, 2022 WL 108586, at *2 (Iowa Ct. App. Jan. 12, 2022); *see also In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014). Similarly, in looking at the child's need for a permanent home, "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 41.

Here, although the father was to begin his third round of inpatient substance-use treatment, he has never been able to fully complete drug treatment. And, just a couple of weeks before the termination hearing, he tested positive for methamphetamine. *See In re C.M.*, No. 18-0600, 2018 WL 3650355, at *2 (Iowa Ct. App. Aug. 1, 2018) ("The father's failure to attain long-lasting sobriety has a direct, negative impact on his ability to provide for this child's long-term growth and physical, mental, and emotional well-being."). This is not a case in which the father has had any significant periods of sobriety. *See In re B.T.*, 894 N.W.2d 29, 34–35 (Iowa Ct. App. 2017) (reversing and remanding for an order transferring guardianship and custody of the ten-year-old child to his grandmother because doing so would lead to more stability than termination of the mother's parental rights). In 2018, the father's parental rights to three other children were terminated

involving similar concerns over substance use. Significantly, his drug counselor testified at trial that the father still used methamphetamine on a weekly basis. So, that lack of progress towards sobriety leads to concerns for S.M.'s safety and stability.

As a further concern related to the best-interest analysis, the father did engage in some mental health work,[2] but he only had his first individual counseling appointment the day before the termination trial and, thus, had not completed the mental-health treatment recommended. He indicated that he was an "emotional user" of substances, so for the father mental wellness related directly to his substance use. For these reasons, we find that termination is in S.M.'s best interests.

**B. Permissive Exception.**

Next, the father requests that we "reverse termination on the permissive basis of the closeness of the bond between S.M. and [the] [f]ather." The closeness of a parent-child bond may serve as a permissive exception to termination. *See* Iowa Code § 232.116(3)(c). It is the father's burden to establish a permissive exception. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). To do so, he must demonstrate by "clear and convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)).

---

[2] The father indicated he believed he only need to engage in mental-health treatment for medication management as opposed to talk therapy.

There is no dispute that the father loves S.M. and she him. However, here, the father recently used methamphetamine—only a few weeks before the termination hearing—and had not demonstrated any significant period of sobriety, even following inpatient and some outpatient treatment. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (stating the parent "waited too long to respond [to services], and the underlying problems which adversely affected her ability to effectively parent were too serious to be overcome in the short period of time prior to the termination hearing"). Likewise, S.M. has not been returned to her father's care or custody since her removal in the first week of her life and has thrived under the current care arrangement. The father has not established that termination would be detrimental to the child because of the strength of the bond between him and S.M., thus, we choose not to rely on the permissive exception to avoid termination of the father's parental rights.

**C. Six-Month Extension.**

In addition, the father requests a six-month extension to work towards reunification. If the juvenile court decides not to termination parental rights after the termination hearing, it may find there is clear and convincing evidence that child-in-need-of-assistance proceedings should continue and enter an order to extend the time for reunification in accordance with section 232.104(2)(b). *See* Iowa Code § 232.117(5). The court may continue the proceedings for an additional six months if it finds "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

Based on the father's long history of using illegal substances and his struggle to achieve sobriety, we cannot say the need for removal will be remedied

within six months. *See In re Z.S.*, No. 15-1535, 2016 WL 757419, at *2 (Iowa Ct. App. Feb. 24, 2016) ("In determining the future actions of the parent, her past conduct is instructive."); *see also In re J.P.*, No. 19-1633, 2020 WL 110425, at *2 (Iowa Ct. App. Jan. 9, 2020) (questioning whether a parent's relationship with methamphetamine was over where the parent had a long history of using the drug and had been sober only two months before the termination hearing); *In re K.V.*, No. 19-1775, 2020 WL 110439, at *1 (Iowa Ct. App. Jan. 9, 2020) ("Even assuming the mother has managed six months of sobriety, a short period of sobriety is not a reliable indicator of her ability to remain sober when considered in light of her history, which includes ten years of substance use and several prior failed attempts at sobriety."). Likewise, the father planned on five months of drug treatment starting the day after the termination hearing.

We will not ask a child to wait longer for permanency on the mere hope of a parent's improvement. *See In re J.S.-M.*, No. 21-0927, 2021 WL 4304213, at *3 (Iowa Ct. App. Sept. 22, 2021) (affirming the juvenile court's refusal "to delay permanency 'on the mere hope' that the father would soon learn to become a self-sufficient parent"); *see also In re B.A.*, No. 11-1507, 2011 WL 5868301, at *2 (Iowa Ct. App. Nov. 23, 2011) (affirming termination when the father's "progress was not sufficient to show more than a mere hope that he might eventually be able to parent the child safely and consistently"). Instead, "the operative question is whether the parent can now, or within a short extension of time will be able to, safely care for the child so that the need for removal will no longer exist." *In re G.B.*, No. 22-0439, 2022 WL 1657190, at *5 (Iowa Ct. App. May 25, 2022). Here, even if given a short extension of time, the father would not be able to safely care for S.M. given his

consistent challenges with his substance use and his mental health. Therefore, we decline to grant the father an additional six months.

**D. Guardianship.**

Lastly, the father argues that "the grandmother's custody and/or guardianship is in the best interest of S.M. for her long-term care." *See* Iowa Code § 232.117(5) (allowing the court, if it does not terminate parental rights, to enter an order under section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to enter an order transferring guardianship and custody of the child to an adult relative). To establish the guardianship, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child." *Id.* § 232.104(4)(a).

Yet, as we have often stated, "a guardianship is not a legally preferable alternative to termination." *B.T.*, 894 N.W.2d at 32. And, when the statutory requirements for termination are met, we may order either termination or a guardianship. *See, e.g.*, *In re N.M.*, No. 17-0054, 2017 WL 1088119, at *3 (Iowa Ct. App. Mar. 22, 2017); *In re S.C.*, No. 15-1912, 2016 WL 903029, at *4 (Iowa Ct. App. Mar. 9, 2016). At the same time, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *In re C.K.*, 558 N.W.2d 170, 174 (Iowa 1997). Because we find that a guardianship is not in S.M.'s best interest for the reasons discussed above, we are unable to order one in lieu of termination. *See* Iowa Code § 232.104(4)(a).

**AFFIRMED.**